DENNIS, Circuit Judge,
concurring in part and dissenting in part:
While I join in the majority’s opinion on the Texas Deceptive Trade Practices Act claim, I respectfully dissent on the Communications Act and common law fraud claims for the following reasons.

I. Section 202(a) Claim

Because the FCC has reversed its position on whether it may regulate billing and collection services under Title II of the Communications Act, Brittan should be allowed to maintain an action based on Section 202(a) of the Communications Act.[1] Therefore, the district court should not have granted judgment on the pleadings.
In determining whether Brittan may maintain an action under Section 202(a) of the Communications Act, we must examine whether the FCC considers billing and collection services to be common carrier communication services, which are subject to regulation under Title II and Section 202(a). However, in conducting this inquiry, the question is not whether the FCC is actually regulating billing and collection services under Title II, but rather whether the FCC can regulate billing and collection services under this Title.
In 1986, the FCC held that billing and collection services were not subject to Title II regulation because: (1) they were financial and administrative services, not communication services, and (2) they were not common carrier services. In re Detariffing of Billing and Collection Services, 102 F.C.C.2d 1150 (1986). In 1992, the FCC changed its position and declared that billing and collection services were communication services, but not common carrier services. In re Policies and Rules Concerning Local Exchange Carrier Validation and Billing Information for Joint Use Calling Cards, 1 F.C.C.Rcd. 3528, *909 3533 n.50 (1992). Therefore, these services were still not subject to Title II regulation. Id. However, in 1998, the FCC changed its position again and held that billing and collection services are common carrier services and subject to Title II regulation. In the Matter of Federal-State Joint Board on Universal Service, 13 F.C.C.Rcd. 24,774, ¶ 70 (1998) (“We believe that a carrier’s billing and collection services are subject to regulation as common carrier services under Title II.”).
Although the FCC has only chosen to regulate billing and collection services involving local exchange carriers and its local telephone customers, this does not mean that Title II and Section 202(a) do not encompass all billing and collection services. In 1999, the FCC explained that whether particular billing and collection services are actually regulated or not depends on whether regulation is needed to protect competition. In re Calling Party Pays Services Offering in the Commercial Mobile Radio Services, 14 F.C.C.Rcd. 10,-861, ¶ 59 (1999) (“In considering the regulatory treatment of billing and collection services, we observe that we have generally declined to regulate the provision of billing and collection services unless regulation is needed to protect competition.”). Consequently, although the FCC currently declines to regulate certain aspects of billing and collection services under Title II, the FCC still has the capacity to regulate these services, including billing and collection services involving long-distance providers such as Brittan.
Because the FCC considers billing and collection services to be covered by Title II and Section 202(a), Brittan should be allowed to maintain its Communications Act claim against SWBT, and the district court’s judgment on the pleadings should be REVERSED.

II. Common Law Fraud Claim

I also disagree that the district court properly granted summary judgment on the common law fraud claim was proper because Brittan could not have justifiably relied on SWBT’s promise to promptly restore service as a matter of law. Brittan could have reasonably believed that (1) Billing Concepts would allow billing and collection services to resume and (2) after that approval came, SWBT would restore service within a “day or two.” Therefore, Brittan could have justifiably .relied on SWBT’s promise to restore service, believing that SWBT would restore service within two days after Billing Concepts ordered service to resume, not the three weeks it actually took.
It is true that Billing Concepts, not SWBT, controlled whether billing and collection services would resume. However, the relationship between Brittan and Billing Concepts, as well as Billing Concepts’ financial incentive in allowing SWBT to resume service, could allow Brittan to reasonably believe that Billing Concepts’ approval was forthcoming. And in fact, on November 24, within eight days of SWBT’s promise to restore service, Billing Concepts did order SWBT to reinstate billing and collection services to Brittan.
Brittan could have believed that SWBT would restore service within a “day or two” after Billing Concepts’ permitted service to restart. Jim Edwards, CEO of Brittan, testified in his deposition that at the teleconference on November 16, 1998, Dick Oxler, SWBT’s Director of Billing and Collection, stated that he could resume billing and-collection services within “the next day or two.” Even if Brittan could not have reasonably believed that service would be restored by November 17 or 18, it could have justifiably relied on that statement to believe that service would be restored on November 25 or 26, *910 in “the next day or two” after Billing Concepts ordered SWBT to restart service. Instead, SWBT did not restore service until December 15.
Because Brittan could have justifiably relied on SWBT’s promise to restore service within a “day or two” after Billing Concepts ordered service to resume, summary judgment should not have been granted. Therefore, the district court’s decision to grant summary judgment on the common law fraud claim should be
REVERSED.

. Title II regulates common carrier communication services in general. More specifically, Section 202(a) is a provision of Title II and prohibits discrimination involving common carrier communication services.